CHARLES W. KIRTLAND *vs.* LEONARD L. HOTCHKISS.

The legislature has power to tax persons residing in this state for money loaned by them to persons residing out of the state, and secured upon real estate out of the state. [One Judge dissenting.]

The statute (Gen. Statutes, Rev. of 1866, p. 709, sec. 8,) which enumerates the kinds of property that are subject to taxation, includes such loans.

Money invested in bonds, secured by deeds of trust of real estate situated in another state, held to be taxable under this statute.

PETITION for an injunction against the levy of certain tax warrants upon the real estate of the petitioner and the collection of certain taxes from his property; brought to the Superior Court in Litchfield County.

The respondent was tax collector of the town of Woodbury in Litchfield County, in which town the petitioner resided at the time his property was assessed and the taxes in question laid. The property taxed, so far as the taxes were claimed to be illegal, was an amount invested in bonds in the city of Chicago in the state of Illinois, secured on real estate in that city by deeds of trust; the Board of Relief of the town of Woodbury having added to the assessment list of the petitioner in the year 1869 the sum of $18,000 on this account, and in the year 1870 the sum of $20,000. It appeared that the deeds of trust contained a provision that all taxes and

assessments on the property conveyed thereby should be paid by the obligor, without abatement on account of the mortgage lien, and that the property might be sold at auction in the city of Chicago, by the trustee, upon twenty days notice, in case of any default of payment or failure of the obligor to perform any of his covenants, and that a good title, free from any right of redemption on the part of the obligor, might in that case be given by the trustee. It was also stipulated 'that the loan was made under and was to be governed by the laws of Illinois. It also appeared that the loan had been since paid up when it became due, and had been re-invested by the trustee in the city of Chicago in the same manner. The respondent had as tax collector levied his tax warrants on the real estate of the petitioner in Woodbury and advertised it for sale.

The court found the above facts and reserved the case for the advice of this court.

*Cothren*, for the petitioner.

1. Property lying beyond the jurisdiction of the state is not a subject upon which her taxing power can be legitimately exercised. The attempt to do this is an attempt at arbitrary taxation without legal or territorial jurisdiction, and without returning an equivalent in that which is the correlative of all taxation—protection to person or property; a proceeding which is only a form of spoliation or confiscation. The power of taxation of a state is limited to persons, property, and business within her jurisdiction; all taxation must relate to one of these subjects. *Case of State Tax on Foreign-held Bonds*, 15 Wall., 300, 319. Mr. Justice Field, delivering the opinion of the court in this case, says: (referring to the case of *Railroad Co.* v. *Jackson*, 7 Wall., 262,) "The decision is nevertheless authority for the doctrine that property lying beyond the jurisdiction of the state is not a subject upon which her taxing power can be legitimately exercised. Indeed, it would seem that no adjudication should be necessary to establish so obvious a proposition. The power of taxation, however vast in its character, and searching in its extent, is necessarily limited to subjects within the jurisdiction of the state." All

subjects over which the sovereign power of a state extends, are objects of taxation, but those over which it does not extend are, upon the soundest principles, exempt from taxation. This proposition may almost be pronounced self-evident. *McCulloch* v. *State of Maryland*, 4 Wheat., 316, 429. The right to tax arises from the correlative duty to protect; but if there is no jurisdiction over the property, there can be no protection, and consequently no rightful taxation. *United States* v. *Rice*, 4 Wheat., 246. "It is an eternal principle of justice that jurisdiction cannot be justly exercised by a state over property not within reach of its process, or over persons not owing it allegiance, or not subjected to its jurisdiction by being found within its limits." *Mills* v. *Duryee*, 7 Cranch, 481. This decision is quoted with approval in *Middlebrooks* v. *Springfield Fire Ins. Co.*, 14 Conn., 307. See also *Providence Bank* v. *Billings*, 4 Pet., 561; *Harrison* v. *Story*, 5 Cranch, 289. "It is for the legislature to decide what persons and property shall be reached by the exercise of the power of taxation, and in what proportions, and by what processes and instrumentalities, taxes shall be assessed and collected. The authority extends over all persons and property within the sphere of its territorial jurisdiction." *St. Louis* v. *Ferry Co.*, 11 Wall., 423, 429. "Where there is jurisdiction neither as to the person nor property, the imposition of a tax would be *ultra vires*, and void. It is objected to the act, that it imposes taxes upon property beyond the jurisdiction of the state. If such be the fact, the tax, to that extent, is invalid, for the power of taxation of every state is necessarily confined to subjects within its jurisdiction." *Delaware Railroad Tax Case*, 18 Wall., 229.

2. A resident of this state is not liable to be assessed and taxed here, for his capital invested in loans in other states upon securities taken and held in those states by his agents. Whether the owner of property thus situated is liable to be assessed here for it, depends upon the question whether it can be properly and legally held to be within this state at the time of the assessment. As such property has no actual location or *situs* within this state, notwithstanding the owner resides

here, it is not subject to taxation. *People* v. *Gardner*, 52 Barb., 352. Our statute, existing at the time of the levy of the tax in question, required taxes to be laid on all real and personal property in this state. Rev. Stat. of 1866, p. 713. Was Kirtland's property on which this assessment was laid, within this state? We answer, it was not. It consisted of $20,000 loaned, and securities taken and held for the payment of the loan, in the state of Illinois. It was in the hands of his trustee, who resided in Chicago in that state. The loan was secured by trust deeds on land in that city, on which the taxes were to be paid without abatement on account of the lien thereon, by the borrower of the money, or by the trustee for him, and, in case of default, the land was to be sold by the trustee and the contract fully satisfied. It was expressly stipulated that the loan was made under, and to be governed by, the laws of Illinois, and Kirtland was, to all intents and purposes, cut off from connection with the management and control of the loan, reserving to himself only the privilege of receiving the interest on the loan and the principal when due. The case expressly finds that this property was situated or invested out of this state, in the hands of the trustee; and that the loan was paid at maturity, and again re-invested in Chicago. To all intents and purposes this property is as fully out of the jurisdiction of this state as if it were land situate in the state of Illinois. Even if the trust deed were in Kirtland's hands, it would be only the evidence of a debt located in Illinois, as a title deed would be evidence of ownership of land in the same state. No court has ever held that title deeds to real estate were taxable. It would be a tax upon evidence, and not a tax upon property. In the case of *People* v. *Gardner*, above cited, the court say (p. 356): "It is clear that the property on account of which the assessment was made, had no actual location or *situs* within this state. For the moneys loaned, and the securities taken and held for the payment of such loans, were actually in the states of Wisconsin and Illinois. So far as they were things having a substantial existence, they were so in those states, and not elsewhere. As such, they were within the sole protection of the

laws of those states. The validity of the agreements under which the loans were made, the protection of the securities taken for their payment, and the remedies provided for enforcing the securities, depended alike upon such laws. In neither respect did the relator derive any benefit whatever from the laws of this state. And the consideration from which the right to impose taxes has been theoretically derived, has, therefore, no foundation so far as the assessment in controversy is concerned. Under that theory the government, extending the security of its protection to property, is justly entitled, by way of taxes, to its ratable equivalent of the expenses incurred for the protection afforded to it. In this instance that was not done, and could not be done, by the government of this state. But it was done by the government of the states in which the loans were made. And the recompense for that service should justly be returned to the authorities of such states. This state has performed nothing whatever for which such recompense can be properly demanded by its authorities." The court further say, in the same case: "The learned counsel very earnestly urged upon the consideration of the court, that as this property consisted of what the law denominates choses in action, being obligations of an intangible nature, it was within the state, because the relator was its owner; that from its nature it must follow the person of him to whom the obligations are owing. By a legal fiction the personal estate of the owner has for some purposes been deemed to follow its owner. But in the adjustment of systems of taxation this fiction has been very generally rejected, on the ground that it was productive of unjust consequences." In the case of *The People* v. *Commissioners of Taxes*, 35 N. York, 440, Ch. J. Davies says: "Among the propositions argued on behalf of the plaintiff, in that case, it was urged that personal estate, having no fixed *situs*, followed the person, and that the property subjected to taxation in that case could not be legally taxed, because the owner was domiciled out of the state. That argument was carefully considered and rejected by the Supreme Court of Vermont. The owner of property within the limits of a state, whether it be real or

personal, and no matter where the owner has his domicil, has a right to call upon the government of the state to protect such property by its laws, and its officers acting under such laws. But such protection cannot be afforded unless means, by the way of taxes, are furnished to afford protection. And taxes are no more to be levied on the property of the resident to protect the property of the non-resident, than taxes are to be levied upon the property of a non-resident to protect the property of a resident; all property enjoying protection must equally share the burden which that protection imposes and demands." In the well considered case of *Catlin* v. *Hull*, 21 Verm., 152, the learned judge says: "It is undoubtedly true that by the generally acknowledged principles of public law personal chattels follow the person of the owner, and that upon his death they are to be distributed according to the law of his domicil, and, in general, any conveyance of chattels good by the law of his own domicil will be good elsewhere. But this rule is merely a legal fiction, adopted from consideration of general convenience and policy for the benefit of commerce, and to enable persons to dispose of their property, at their decease, agreeably to their wishes. But we do not consider this doctrine in relation to the *situs* of personal chattels, and its transfer and distribution, as at all conflicting with the actual jurisdiction of the state where it is situate over it, or with their right to subject it, in common with the other property of the state, to share the burden of the government by taxation." Marshall, C. J., in the celebrated case of *McCulloch* v. *Maryland*, 4 Wheat., 429, expressly recognizes this doctrine of dominion and sovereignty in the state, and further, that as a necessary incident to such sovereignty, and co-extensive with it, is the power of taxation. "The power of the state to tax all property within its limits, whether real or personal, is unquestionable. It would be competent for the legislature to tax the personal property owned within this state by non-residents." *Wilson* v. *Mayor &c., of N. York*, 4 E. D. Smith, 675. "All personal property belonging to a corporation permanently located out of this state is exempt from taxation

here. Such property, therefore, is not to be valued as part of the capital stock of the corporation." See also *Pacific Steamship Co.* v. *Commissioners of Taxes*, 46 How. Pr. R., 315. Our own court holds that the personal property of non-residents is taxable here. *Sprague* v. *Town of Lisbon*, 30 Conn., 18. The tax laws of a state can have no extra territorial operation; nor can any law of a state, inconsistent with the terms of a contract made with, or payable to, parties out of the state, have any effect upon the contract whilst it is in the hands of such parties, or other non-residents of the state." *Case of State Tax on Foreign-held Bonds*, 15 Wall., 300. In the case at bar it is expressly agreed that the contract is made out of the state, under the laws, and is to be governed by the laws, of Illinois. If then a state cannot tax property beyond its jurisdiction, having determined the *situs* of any given property for the purpose of taxation, its capability of being taxed in one state makes it incapable of being taxed in any other state at the same time, for the same thing certainly cannot be property in two distinct states or jurisdictions, and in two distinct forms, at the same time. If, therefore, the land, or the investment, is property in the state where it is, and where it is taxed, then the deed, the mortgage, or any other form of title, cannot be property for the same purpose, but must be only evidence of title or debt. *Jennings* v. *Davis*, 31 Conn., 143. These evidences of title, or debts, create no new property. Credit, title, ownership, are not things. They are conclusions and deductions of law from certain facts. The United States court rejected the theory that a credit has a legal *situs* where the owner resides, when it held, in the case of *Brown* v. *Kennedy*, 15 Wall., 591, that a bond and mortgage form of "credit" could be confiscated by the United States where the mortgage debtor resided, though, in point of fact, the bond and mortgage were never in the state of Kansas where the proceedings in forfeiture took place, and were, in fact, in possession of the owner, in the rebel lines, in the state of Virginia.

3. There is another fatal objection to the validity and legality of the tax on the property assessed in this case. It

is a clear case of double taxation on the same property. This is property loaned in Illinois, situate there, taxed there, protected and governed, in all respects, by the laws of that state. An attempt, under the laws of this state, to tax it again is an attempt at double taxation. The board had no right, by the decisions of our courts, to add the property in question to Kirtland's list. "A construction of a statute which subjects property to double taxation is always to be avoided if practicable. And courts will incline against a construction which will increase rather than diminish the inequality of taxation." *Osborn* v. *N. York & N. Haven R. R. Co.*, 40 Conn., 491. The theory of our statutes is against double taxation. The mortgagor swears off his indebtedness, and it is added to the list of the mortgagee. And it is a noticeable fact, that it is added to the creditor's list in the town where the land lies. By the statute, revision of 1866, which was in force when this tax was levied, personal property out of the state was exempt if taxed where it was situated. Rev. 1866, p. 713, sec. 24. If then a tax-payer invests his money where it furnishes its proportion of the burden of taxation to the state whose laws protect it, is he not fully entitled to exemption here? We are apt to think that a state in its sovereignty can do as it pleases in regard to taxation. Such, however, is not the opinion of the Supreme Court of the United States in the late case of *Loan Association* v. *Topeka*, 20 Wall:, 655, in which the court say: "There is no such thing in the theory of our government, state or national, as unlimited power in any of their branches. The executive, the legislative, and the judicial departments are all of limited and defined powers. There are limitations of power which arise out of the essential nature of all free governments, implied reservations of individual rights, without which the social compact could not exist, and which are respected by all free governments entitled to the name. Among these is the limitation of the right of taxation." In *Savings & Loan Association* v. *Austin*, 46 Cal., 415, the court say: "If a debt for money lent and secured by mortgage be taxed, and if the mortgaged property be also taxed, the same value and subject matter has been twice taxed,

and it presents a case of double taxation.　　　　＊　　　＊　　　＊
In solving the question of double taxation on a debt for money
loaned, the true point of inquiry is not whether the debt is,
or is not, secured by mortgage, but whether the money for the
use of which the debt was created is taxed in the hands of
the borrower or other tax-payer to whom he has paid.　The
money is the substance, of which the debt is but the shadow
and representative; and though in general, and perhaps in a
strict sense, it is property, it is only because it is capable of
being again converted into money.　Nevertheless, it but rep-
resents the sum originally loaned; and a tax upon the latter
is substantially a tax upon the former."

4.　A tax on loans out of the state, which pay taxes out of
the state, is objectionable on constitutional grounds.　It is an
attempt to tax and impede inter-state commerce.　No lawyer
would claim that a state could constitutionally impose and
collect a tax upon freight taken up within its limits and car-
ried beyond them, or taken up beyond its limits and brought
within them.　Nor that it could impose a tax upon the move-
ment of persons or property from one state to another.
*State Freight Tax Case*, 15 Wall., 232.　"The difficulty of
drawing the line between constitutional and unconstitutional
taxation by a state was acknowledged, and has always been
acknowledged by this court, but that there is such a line is
clear, and the court can best discharge its duty by determining
in each case on which side the tax complained of is.　*Osborn*
v. *Mobile*, 16 Wall., 481.　If a state cannot tax freight and
articles of personal property going out of the state, for the
purposes of trade in another, how can it tax money going out
of the state for investment, to be there taxed by the govern-
ment which protects it."　Is it because it is simply money?
May not persons transport to other states their surplus money
as well as the surplus of their other personal property?
Every burden placed upon this right is a restriction, and if a
state has the right to impose a light burden on it, it may
impose such enormous burdens as to amount to the utter
destruction of the right.

*Huntington* and *E. W. Seymour*, for the respondent.

CARPENTER, J. The question for our consideration in this case may be stated thus: Is a citizen of this state liable to pay taxes on money loaned out of the state? The question resolves itself into two inquiries; first, does the statute require money so loaned to be taxed? second, has the legislature power to tax it?

Concerning the first question little need be said. The statute in force when the taxes under consideration were levied, is as follows: " Personal property, in this state or elsewhere, not expressly exempted by this act, shall be deemed, for the purposes of taxation, to include all moneys, credits, choses in action, bonds, notes, stocks, (except United States stocks,) goods, chattels, or effects, or any interest therein; all ships and vessels propelled by steam or wind, whether at home or abroad, or whether registered, enrolled or licensed in this state or elsewhere, or any interest, either legal or equitable, therein; and such personal property, or interest therein, being the property of any person resident in this state, shall be valued and assessed at its just and true value at the time of such assessment, and set in the list at its actual valuation, in the list of the town where the owner resides, except when otherwise provided; but this section shall not be deemed to embrace money or property actually invested in the business of merchandizing or manufacturing, when located out of this state." Gen. Statutes, Rev. of 1866, p. 709, sec. 8.

The first part of this statute is broad enough to include not only debts due from citizens of other states, but also goods and chattels without the state. The latter however are exempt by the terms of sec. 24, p. 713. The 8th section also exempts money or property invested in the business of merchandizing or manufacturing out of the state. These exemptions are in the nature of exceptions, and clearly imply that but for them all such property would be taxable by the letter of the statute.

There is no such exception in favor of debts due from parties out of the state, and hence the reasonable construction

of the statute is, that such debts are taxable. To remove all doubt on the subject the legislature in 1872 made them taxable in more explicit terms. We regard that statute as explanatory of the act under consideration, and not an alteration thereof. We entertain no doubt therefore as to the intention of the legislature. Indeed this point is not seriously controverted.

The second and most important question in the case is, whether the legislature has power to tax money so invested.

Unlike some of the states we have no constitutional provision limiting and defining the power of taxation. The case therefore does not depend upon the construction of any particular provision of our constitution, but it involves a consideration of the principles of natural right and justice.

The petitioner insists that it is a case of extra-territorial taxation; that the legislature has attempted to reach its hand beyond the limits of the state, and lay hold of property situated in other jurisdictions and subject it to taxation here. It is agreed that real estate cannot be so reached; and visible, tangible personal property is practically upon the same footing by the provisions of our statute.

As we have already seen, the statute clearly distinguishes between choses in action and goods and chattels. The reasons for this are obvious; and they are reasons, not only for the exercise of the power of taxation in respect to the former, but also, to some extent, for the existence of the power as well. We do not care however to refer to reasons based upon expediency or public policy. Although arguments may be drawn from both these sources sustaining the power contended for, yet they are, in the main, arguments which address themselves to the discretion of the legislature.

We shall therefore limit our discussion to two inquiries:—
1. As to the place and manner of taxing debts heretofore, and legislation affecting the question. 2. As to the nature and character of the property under consideration.

Our present statute expressly requires the taxation of "notes, bonds, and stocks, (not issued by the United States,) moneys, credits, choses in action," &c., and it provides that

"such property, belonging to any resident in this state, shall be set in his list *in the town where he resides*, at its then actual valuation, except when otherwise provided; but money secured by mortgage upon real estate in this state shall be set in the list and taxed only in the town where such real estate is situated." This statute assumes that notes, bonds, and other choses in action, for the purposes of taxation, are situated where the creditor resides. In this respect the present does not differ materially from prior statutes, since money at interest has been a subject of taxation. It is believed that it has been uniformly taxed where the creditor resides, except in the single instance of money secured by mortgage on real estate, in which case it is taxable where the real estate is situated. This provision is of modern origin, and grew out of another provision allowing the debtor to have deducted from his own list the amount of the debt, and requiring it to be set in the list of the creditor.

In the Revised Statutes of 1866, in the list of property exempt from taxation, are found the state bonds, issued under the act of 1865.

In 1869 certain towns were authorized to issue bonds to aid in the construction of railroads, and it is provided that they "shall be exempt from taxation in the hands of the holders of such bonds." And the bonds of certain railroads in this state are in like manner exempt. These statutes clearly imply that such bonds, if not thus exempted, would be taxable, under the operation of the general statute, in the towns and cities where the holders thereof resided.

The act of Congress of March 3d, 1863, authorizing the issue of bonds, &c., provides as follows: "And all the bonds and treasury notes or United States notes issued under the provisions of this act shall be exempt from taxation *by or under state or municipal authority.*" U. S. Stat., 1863, p. 710. But for this provision such bonds would have been taxable; and they could only have been taxed by state or municipal authority through the holders; clearly showing that such bonds, for the purpose of taxation, have a *situs* where the owner resides.

We proceed in the second place to consider the nature and character of a debt or chose in action.

It has not a visible, tangible form. The note, bond, or account even, may be evidence of a debt, but it is not the debt itself. The specific money when loaned, and received by the borrower, is no longer the property of the creditor. It is soon merged in the circulating mass, and the creditor can neither identify and claim it, nor put his hand upon any property purchased with it, and say that that is his. The money may be invested in real estate, or manufacturing, or merchandizing, or speculation. It may prove a profitable investment, or it may in a short time prove a total loss. It is all the same to the creditor so long as his debtor's ability to pay is unimpaired. He has simply a right to receive a given sum of money with interest or damages for its detention. It is a personal right, and accompanies the person of the creditor. The debtor is under a corresponding obligation to pay the demand. The right to receive is valuable, and through it an income is derived. That right may with propriety be taxed. The obligation to pay is a burden, and has never, to our knowledge, been the subject of taxation. It seems to us therefore that the appropriate place to tax money at interest, is where the creditor resides, and that for that purpose it may with propriety be said to be located with the creditor.

In respect to the question now under consideration, there is a strong analogy between a money demand, evidenced by a note or bond, and shares of stock in a corporation. The Supreme Court of the United States has decided that shares of stock in national banks are property, separate and distinct from the property of the corporations which they represent. *Van Allen* v. *Assessors*, 3 Wall., 573; *Bradley* v. *The People*, 4 Wall., 459; *Nat. Bank* v. *Commonwealth*, 9 Wall., 353. In the last case the State of Kentucky levied a tax upon the shares of stock in the bank, payable by the cashier. It was held that there was a distinction between the shares of stock and the capital of the bank; that the latter, when invested in government bonds, was not taxable; that shares of stock, notwithstanding the investment of the capital in government bonds, were taxable.

In the case of *Minot* v. *The Philadelphia, Wilmington &
Baltimore Railroad Co.*, 18 Wall., 206, a distinction is made
between shares of railroad stock and the property of the cor-
poration. The State of Delaware levied a tax of one-fourth
of one per cent. upon the actual cash value of every share of
the capital stock of the defendant corporation, with a proviso
that the company should only be required to pay the tax on
such number of the shares of its capital stock as would be in
that proportion to the whole number of shares which the
length of the road within the limits of the state should bear
to the whole length of the road. It was claimed that this
was a tax upon the shareholders, and that, as the proportion
of shareholders residing in the state was less than the propor-
tion of the length of the road lying within the state, it was
an attempt to tax property beyond the jurisdiction of the state.

In respect to this claim the court, on page 229, says:—" If
such be the fact the tax to that extent is invalid, for the power
of taxation of every state is necessarily confined to subjects
within its jurisdiction. *       *       And the argument is,
that if the tax be laid upon the shares of the stockholders it
falls *upon property out of the state*, because nearly all the
stockholders, at least a much greater number than the ratio
of the mileage of the road in Delaware to its entire length,
are citizens and residents of other states; and if the tax be
laid upon the shares as representing the property of the cor-
poration, it falls upon property out of the state, because the
ratio of the mileage of the road in Delaware to its entire
length is not that which the capital invested by the company
in that state bears to the entire capital of the company, or
that which the value of the property of the company there
situated bears to the value of its entire property. If the
assumption of the appellant were correct, there would be diffi-
culty in sustaining the validity of the tax. The share of a
stockholder is, in one aspect, something different from the
capital stock of the company; the latter only is the property
of the corporation; the former is the individual interest of the
stockholder, constituting his right to a proportional part of
the dividends when declared, and to a proportional part of

the effects of the corporation when dissolved, after payment of its debts. Regarded in that aspect it is an interest or right which accompanies the person of the owner, having no locality independent of his domicil. But whether, when thus regarded, it can be treated as so far severable from the property to which it relates as to be taxable independently of the locality of the latter, is a question not necessary now to decide."

The precise question involved in the present case was not decided in that; but there is a strong intimation that shares of railroad stock can only be taxed in the state where the owner resides.

The case of *Dwight* v. *Mayor &c., of Boston,* 12 Allen, 316, is a strong case on this point. The plaintiff, a shareholder in a foreign corporation, claimed a deduction from the tax on his stock on account of the tax on the property of the corporation in the state where it was situated. The court denied the validity of his claim. The court says:—"But our whole system of taxation as established and practiced is to disregard the liability of shares in foreign corporations to taxation in the states where they are situated. Thus shares in a foreign railroad corporation held by citizens of this state are fully taxed here, and no deduction is made for any taxation to which the corporations are subject in the states where they are situated. So it is in regard to shares held by our citizens in banks, insurance companies, and other moneyed corporations, situated in other states. Such shares when held by our citizens are here treated as so much personal estate, following the person of the owner, and taxable at their full value in this commonwealth, regardless of what may be the foreign law as to taxation of the capital or any part of it elsewhere."

If the doctrine of these cases is sound, and we do not wish to intimate that it is not, we may with even more propriety distinguish between the property of a creditor in a debt, and the property of the debtor.

The case of *Catlin* v. *Hull,* 21 Vermont, 152, a case cited and much relied on by the plaintiff's counsel, recognizes this distinction, and also the liability of the creditor to be taxed

where he resides. A person residing in New York owned personal estate, consisting of notes and other obligations of debtors residing in the state of Vermont. These he deposited with the plaintiff residing in that state, as his agent, for management, collection and investment, and the plaintiff being such agent was assessed in that capacity for the estate thus in his hands. The Superior Court sustained the tax, but on page 161 the court say: "And as this power of taxation in this state is only to be exercised in cases where such property is not shown to be taxed to the real owner, where he resides, we think that there is no reason for saying that this power has been exercised in any unjust spirit, or that its exercise shows any want of proper comity in our state government."

Of the many cases cited by the petitioner's counsel, only one seems to be directly in point, and that is *The People* v. *Gardner*, 51 Barb., 352. In that case, however, the question was whether the New York statute, which provides for the taxation of real and personal property situated within the state, extended to debts due from non-residents. The court held that it did not. The question was not whether the legislature had power to tax them, but whether it had in fact taxed them. In that case *Catlin* v. *Hull*, supra, and *Hoyt* v. *Commissioners of Taxes*, 23 N. York, 224, are cited as sustaining the decision. In the latter case the plaintiff, residing in New York, was assessed in respect to capital invested in business in New Orleans, and in respect to chattels on his farm in New Jersey. The court held that the assessment was erroneous—that the property assessed was not within the state. But the court clearly distinguishes between chattels and choses in action. The marginal note says—"Debts and choses in action in general follow the domicil of the owner." The language of the court is, after stating the conclusion to which they have arrived—"This conclusion is intended to embrace only property which is visible and tangible, so as to be capable of a *situs* away from the owner or his domicil; and we do not consider the question in reference to personal estate of a different description. It must be within this state in order to be subject to taxation, for so is the statute; *but that may be true of*

*choses in action, and obligations for the payment of money due
to a creditor resident here* from a debtor whose domicil is in
another state. If the securities are separated from the person
and domicil of the owner, and are actually in the hands of an
agent in another state for collection, investment and reinvest-
ment there, it may be that capital thus situated should be
regarded as foreign and not domestic, in the absence of any
*special statutory provision intended for such a case.* Questions
of this character need not now be determined." This case
therefore is not an authority sustaining the decision in *The
People* v. *Gardner;* and that case stands alone and unsup-
ported. What the decision of the Court of Appeals will be
upon this question remains to be seen.

The conclusion then to which we have come is, that it is
competent for the legislature of this state to tax our own
citizens in respect to money loaned by them to persons resid-
ing out of the state.

We advise the Superior Court to render judgment for the
respondents.

In this opinion the other judges concurred; except FOSTER,
J., who dissented.

FOSTER, J. Since the close of our late civil war the sub-
ject of taxation has become one of absorbing interest.
Very large sums of money are necessary to meet even the
interest on the immense debts of our country, our state,
and our various municipalities. It is but natural there-
fore that there should be an eager desire to bring all persons,
all forms of property, all business, all the incidents of busi-
ness, under the taxing power, that the revenues may be
increased. Sound principles may be violated, palpable wrong
may be done, but if the result be to lighten the public bur-
dens, there is great danger that any protestations against the
wrong, any appeal for relief, will be listened to with great
impatience.

Taxation is a necessary attribute of sovereignty. As the
exigencies of government cannot be limited, there can be no

restriction on the power of the state to tax, except what may be found in the organic law. The power is necessarily limited to subjects within the jurisdiction of the state. These subjects are persons, property, and business.

Taxation and protection are correlative terms. Protection to the person is the ground on which the right to tax the person rests. Protection to the business, protection to that portion of the property not taken by the tax, is the consideration or compensation for all legitimate taxation on business or on property. The person must be domiciled within the state to be subject to a personal or poll tax; the business or the property must also be within the territory of the state to confer jurisdiction over them.

These are very plain and simple principles, almost too familiar to be repeated; and yet there seems to be danger lest they should be overlooked or forgotten in considering such a case as is now before us.

That the person of the plaintiff is within the jurisdiction, and subject therefore to the taxing power, is apparent from the record. This tax, however, is not imposed on the person; it is imposed on the property of the plaintiff, and as such it must be sustained, if sustained at all. Property is a word perhaps spoken and written almost as frequently as any word in our language, and sometimes with very vague ideas attached to it. What is property?

It is the product of labor, and is always measured by labor. Property, and the rights of property, cannot be created except by an application of labor of some kind to material substances. Property, therefore, is embodied and accumulated labor. Where the rights of labor are recognized, it is endued with the attributes and incidents of titles, inchoate, equitable, or legal, which inhere in the property, follow it, and form a component part of it wherever found. The case does not require any description of the various species of property, real, personal, &c. Real property has of course an immovable situs, and can never be subject to any taxation except that imposed by the government within whose jurisdiction it is situate. The reason is, that that government is the only one that can

afford it protection. Personal property, of whatever it may consist, though capable of being transported from place to place, if it be of a visible and tangible kind, would seem, in the nature of things, to follow the same rule and for the same reason; that is, to be subject to taxation by the state within whose jurisdiction 'it is situate, as that state only has dominion over it, and as that state only can afford it protection.

Now if the property in question be considered real property, it being in the state of Illinois, any tax upon it by Connecticut would be extra-territorial and void. If it be considered personal property, of a visible and tangible character, it is still in the state of Illinois, and so just as much out of the dominion and beyond the jurisdiction of the state of Connecticut as though it were real property.

If we consider the property to be an interest in real or personal property, or a title, inchoate, equitable, or legal, to such property in Illinois, such interest, or such title, is no legitimate subject of taxation in Connecticut. The corpus and situs of this property being in Illinois, and subject of course to taxation there because within her jurisdiction, no interest in it, no title to it, can be taxable in Connecticut. Such a claim involves one of two absurdities; either that the same property may be in two places at the same time, or that two independent governments can have jurisdiction over the same subject matter at one and the same time.

But the property of the plaintiff on which this tax has been imposed is not real property, nor is it personal, of the character here considered. It may be well to describe it precisely, that there may be no room for misunderstanding.

The plaintiff loaned money in the city of Chicago, in the state of Illinois, on bonds conditioned for its repayment, and secured by deeds of trust. One of said bonds, and one of said deeds, as a specimen of all, is made part of the record. This bond declares "that it is made under, and is in all respects to be construed, by the laws of the state of Illinois, and is given for an actual loan of money [$3,000] made at the city of Chicago, by the said Charles W. Kirtland, [the

plaintiff,] to the said Edmund A. Cummings, [the obligor,] on the day of the date hereof," [July 17th, 1869.]

The deed of the same date is a conveyance in fee, by Edmund A. Cummings and Ellen M., his wife, of a lot of land in the city of Chicago, to Norman C. Perkins, of said city, to be held by him in trust, as security for the payment of said loan, with power to sell and convey the same, and apply the proceeds in payment of the loan, in case of default on the part of the said Edmund A. Cummings to perform the stipulations of said bond.

It is quite obvious that Cummings has incurred a debt to Kirtland, and that Kirtland has a claim against Cummings. Cummings is the debtor, Kirtland the creditor. Has this debt a situs ? If it has, where is it ? In Illinois, or in Connecticut ? The contract to loan was made in Illinois, there the creditor parted with his money, there is the property pledged for its re-payment, there the debtor is domiciled, there the trustee.

This seems to indicate Illinois as the situs of this debt. So far as it is a thing having a substantial existence, it is there, and not elsewhere. Our own statute provides in terms, " that money secured by mortgages upon real estate in this state shall be set in the list and taxed only in the town where said real estate is situated." This manifestly recognizes the situs of the property pledged as security for a debt, as the situs of the debt.

But a debt has no situs. Only a material thing can have a corpus, and only a corpus can have a situs, for it is the location of the corpus that constitutes a situs. A debt is neither visible, tangible, nor ponderable ; it has no situs, no corpus. It is a misnomer to call it property. In legal phrase it is but a *chose in action*, a *jus incorporale*. It is an equitable title in the property of the debtor, and it inheres, as a title, in the property which it represents. It does not follow the person of the owner in his domicile, though he may transfer it there.

These views are fully sustained by the United States Supreme Court, in the case of *Brown* v. *Kennedy*, 15 Wall., 591.

That was a proceeding under the Confiscation Act of July 17, 1862. The Attorney of the United States for the district of Kansas filed an information in the District Court of that district, against a bond, dated May 28, 1860, executed by Lawrence Kennedy to Edward S. Brown, and secured by mortgage, made, acknowledged, and recorded on the same day, by said Lawrence and Eliza his wife. The information prayed that process might issue against the bond and mortgage, and against the estate, property, claim, credits, and rights thereto and therein belonging to said Edward S. Brown, to enforce the forfeiture thereof. A warrant issued to the marshal of the district, dated March 23th, 1863, commanding him to attach, specifically, the above named property, and retain the same in his custody to await the further order of the court, giving notice to all persons claiming the same to appear on the 20th of April, 1863, and show cause, if any they had, why the property should not be condemned as forfeited. To this warrant the marshal made return that he had served the same according to the precept; that he had attached the bond, mortgage, and credit, and had cited Lawrence Kennedy and Eliza Kennedy, the obligors and mortgagors, &c., &c., as he was commanded to do. On the 5th of May, 1863, the court passed a decree, and ordered that the said bond, mortgage, and credit, be condemned, and declared forfeited to the United States. The decree also ordered Kennedy, one of the obligors and mortgagors, to pay the debt into the court, for the use of the United States; and in pursuance of the decree, payment was made to the officers of the court.

Subsequently to that time, in 1868, Brown, the obligee and mortgagee in this bond and mortgage, having obtained a pardon from the President of the United States, filed a bill in the Circuit Court for the district of Kansas against Kennedy and wife, for the foreclosure of this mortgage. The principal defense was, that the mortgage and the debt secured by it had been confiscated under the act of Congress. That of course put in issue the validity of those proceedings. It was admitted as matter of fact and agreed, that Brown, the complainant, was and always had been a resident of Virginia, and

from June, 1860, until September, 1865, had continuously at his home in that state, the bond and mortgage, and that neither of those instruments was, during any part of that term, in the district of Kansas.

The Circuit Court dismissed the bill, and on appeal that decree was affirmed by the Supreme Court.

No court surely can take cognizance of any subject matter until it is first brought within its jurisdiction. If the debt due from Kennedy to Brown followed the person of Brown, or if we call it a claim, or credit, or property, whatever name we give it, if it was in the possession of Brown at his domicile in Virginia, as the bond and mortgage, the evidences of his debt, were, the proceedings of the court in confiscation, in Kansas, must have been pronounced a nullity, for the conclusive reason that the subject matter was never within the jurisdiction of the court.

The court took a distinction between a debt and the written evidences of the debt. The credit in this case had been proceeded against; that had been confiscated, and so the proceeding was held valid. If the proceeding had been against the bond and mortgage only, the decree would have been a nullity, they not being within the jurisdiction of the court, but in the possession of Brown, in Virginia. Such was the doctrine of the court in *Pelham* v. *Rose*, 9 Wall., 103, where the note, the evidence of the credit, not the credit itself, was the thing proceeded against. The same doctrine was recognized in *Pelham* v. *Way*, 15 Wall., 196, where the court held that the proceedings, not having been against either the debt or credit, but only against the material evidence of it, and that material evidence having been out of the marshal's jurisdiction, no confiscation had been effected.

If these decisions are to be recognized as law, how can it be claimed that on this credit, given by Kirtland to Cummings in the state of Illinois, secured by a deed of real estate there situate, held by a trustee resident there, the debtor being domiciled there, the debt made payable there, the laws of Illinois, by express agreement to govern the contract ; how, (for the question bears repeating,) how can it be claimed that

there is any subject matter within the jurisdiction of Connecticut, on which to impose a tax ?

Will it be said that the right to personal property draws to it the possession, and as the plaintiff in this case was domiciled in Connecticut, this debt, owed to him from Cummings in Illinois, must be considered in Connecticut for the purpose of taxation ? The cases just quoted are clearly inconsistent with such a claim.

That the right to personal property draws to it the possession, and that it follows the person of the owner, is a well established principle, and is to be applied under certain circumstances. It is however a legal fiction, and was never intended to have any extra-territorial effect. It has been adopted by comity, mainly, if not solely, for the purpose of facilitating the transfer of property. This fiction is by no means of universal application, and, in the language of Judge Story, yields whenever it is necessary, for the purposes of justice, that the actual situs of the thing should be examined. If real estate were made subject to the same rule or fiction of law, clearly it would not be withdrawn from the dominion of the state where it was situate. It would remain subject to taxation there and not elsewhere. This fiction also yields to laws for attaching the estate of non-residents, for such laws necessarily assume that property has a situs entirely distinct from the owner's domicile. The cases of *Hoyt* v. *Commissioners of Taxes*, 23 New York, 225, *People* v. *Gardner*, 57 Barb., 356, *People* v. *Commissioners of Taxes*, 35 New York, 440, *Catlin* v. *Hull*, 21 Verm., 152, and *Green* v. *Van Buskirk*, 7 Wall., 139, with many others that might be quoted, seem to place this matter beyond controversy. In one of these cases, *People* v. *Gardner*, the court (p. 357) say : " By a legal fiction, the personal estate of the owner has, for some purposes, been deemed to follow its owner, but in the adjustment of systems of taxation this fiction has been very generally rejected, on the ground that it was productive of unjust consequences." Double taxation may be among these consequences, and that certainly is to be avoided, when practicable, even if we grant the power to impose it. Here, however, the question is not as to double taxation, but simply

of jurisdiction. Has Connecticut dominion over this subject matter for the purposes of taxation? Our statutes differ from the statutes of New York and Vermont, whose decisions have been quoted, and in terms, no doubt, embrace the debt or claim in question. The legislative acts of no state can, however, be of force outside its own territory. If the state of Connecticut can tax personal property in Illinois because its owner lives in Connecticut, why can it not tax real property as well? If any legal reason can be given to sustain the one claim, it will be found equally good to sustain the other. The same reasons which exclude a state from imposing a tax on real property outside its own territory, apply with equal force against laying a tax on personal property outside its territory. The state of Connecticut claims and exercises the right to tax personal property within her own limits. That it may be owned by non-residents makes no difference. It is equally protected by our laws as the property of residents. *Sprague* v. *Lisbon*, 30 Conn., 18. We tax the stock of non-residents held by them in banks, and in other corporations in this state, whose stock is taxable. Our statutes also provide that where any real estate, or any amount equivalent to its valuation, is omitted from the list of any person because of an indebtedness secured by mortgage, the amount of such indebtedness shall be added to the list of the creditor, if resident in the same town; but if he does not reside in the same town, a list shall be made against him embracing such indebtedness, and a written notice addressed to him, that he may appear and show cause why such indebtedness should not be assessed against him.

Two important principles seem fairly deducible from this legislation:—

1st. That a debt is a representative of the property pledged for its payment; a title, inchoate, equitable, or legal to that property; and,

2d. That the property and the debt, or more strictly, so much of the property as will be absorbed in the payment of the debt, and the debt, constitute together but one subject for the purpose of taxation.

The tax being paid on the property without diminution on account of the debt, nothing remains to be taxed. The debt indeed, aside from the property behind it, and of which it is the representative, is simply worthless.

In taxing personal property in other states belonging to our citizens, which our legislature assumes the power to do, the assessors are not required to impose the tax on such property as is shown to them to be fully assessed and taxed in the state where situate, to the same extent as other like property owned by its citizens. Moneys loaned to any party out of this state, and bonds issued by or loans made to any railroad company out of this state, are the only forms of property expressly excepted from this provision.

That the land in Illinois which is the security for this debt, and of which this debt is the representative, has borne its full share of taxes without diminution on account of this debt, has been already shown. If the land were in this state, this would suffice; no tax could be collected on the debt. That the land is in Illinois cannot affect the principle. If each state has dominion over the property, real and personal, within its territory for the purposes of taxation, and he must be a bold man who denies it, that dominion must, from its nature, be exclusive. No other state can have concurrent jurisdiction. Nor does any other state become invested with the power to tax, if the state in which the power is vested omits to exercise that power. Should a state exempt the property, real or personal, within its limits, belonging to non-residents, from taxation, by what authority could any foreign state impose taxes on such property? The question is purely jurisdictional, and the matter of double taxation is not involved. The point is not whether the state may tax a thing twice, but whether there is anything within its jurisdiction that it can tax at all.

The power of the state to tax the business of loaning money, like the power to tax any business transacted within its limits, by way of license or otherwise, whether the money be loaned to parties within or without the state, is unquestionable.

But this power cannot be exercised by a state when the business is done without the state, though it be done by citizens of the state. Citizens of this state, transacting business in Illinois, must be subject to the laws of Illinois, not to the laws of Connecticut.

The result of this reasoning is, that the plaintiff is not liable to taxation in this state, for these debts owing to him in Illinois. It may by some be considered unjust and unequal that a citizen of this state should be allowed to loan money and not pay taxes upon it. But he may invest his money in land, in merchandizing, in manufacturing, &c. &c., abroad, and escape all taxation here. If the one is unjust and unequal, why not the other? Is it because a tax is presumed to be imposed on land, merchandise, manufactures, &c., &c., owned in other states? Such taxes may be imposed and they may not be, and whether they are or not, does not affect the principle. But if such taxes are imposed, it is a sufficient answer to say, that they are also imposed on the money loaned in this case, that is, a tax is levied on the property which it represents. The borrower, not the lender, must ultimately, if not primarily, always pay the tax on money borrowed. The tax is estimated in fixing the rate of interest. This at once suggests the question how far the citizens of Illinois can be restrained or affected by the laws of Connecticut, in their rights to make contracts, in Illinois, for a loan of money. In the case of *Weston* v. *The City of Charleston*, 2 Pet., 449, principles are enunciated which bear directly on this question. Chief Justice Marshall in giving the opinion of the court, (pages 467, 8,) says: "The right to tax the contract to any extent, when made, must operate upon the power to borrow before it is exercised, and have a sensible effect on the contract." The state of Connecticut surely can have no power to legislate over persons, or contracts, or business, in the state of Illinois.

Resort must be had to a legal fiction to draw this debt into Connecticut. It does not appear from the record that even the evidences of the debt, the bond and deed, were held in Connecticut. The security for the debt, the deed of trust, belongs, and would naturally be held, in the hands of the trustee in

Chicago, in whom the legal title to the property was vested. Separated from the property it represents, this debt is not an actuality, but only an idea, an imaginary property. Then, to an imaginary property, we must give an imaginary situs. This is going too far into the domain of the sentimental and spiritual for the purposes of taxation. An imaginary property, with an imaginary situs, has no element of taxation in it.

It should not be forgotten that the duty of the judicial branch of the government is limited to declaring the law as it exists. Any considerations involving its policy or impolicy belong properly to the legislative power. It may not, however, be impertinent, in view of the result to which this opinion leads, to remark, that any system of taxation which subjects the affairs and business of the citizen, at home or abroad, to public scrutiny, will ever be regarded with extreme disfavor. Such inquisitorial powers are antagonistic to free institutions, and are repugnant and abhorrent to the feelings and sentiments of a free people. The great problem of taxation is, how to make it least burdensome and most productive. This inquisitorial system is felt to be intolerably burdensome, while everybody knows that it is shamefully unproductive.

A much heavier rate, imposed on visible and tangible property, which could not be concealed, and would readily be found, would be far more cheerfully borne, and be found far more productive in practice, than a tax levied on what is sought out and discovered, only after a rigid examination, on oath, of the party. However searching these examinations may be made, it is a notorious fact that vast amounts of property escape altogether the grasp of the tax-gatherer, and so results are now as unequal and unjust as they well can be. The demoralization of the public conscience by the frequent administration of oaths, so often taken only to be disregarded, is an evil of the greatest magnitude. Almost any change would seem to be an improvement.

I cannot concur in the opinion of the court, but should advise the Superior Court to render judgment for the petitioner.