## BROWN *v.* KENNEDY.

1. Under the act of July 17th, 1862, " to seize and confiscate the property of rebels," &c., which authorizes the confiscation of all " the estate, property, money, stocks, and *credits* " of rebels,—if the information be filed against a bond and mortgage, praying process against them and against " the estate, property, claim, *credits*, and rights thereto and therein " belonging to the mortgagee, and the warrant, in directing the

marshal to attach and retain in his possession, use these same words; and the marshal return that he has attached "the bond, mortgage, and *credit*," and has cited the mortgagee; and the decree, reciting the return, order that the said "bond, mortgage, and *credit*" be condemned and forfeited—the forfeiture is good, and the record of the proceeding of forfeiture is a bar to a bill of foreclosure on the mortgage. .

2. This is so, though in point of fact the bond and mortgage were never in the district of the United States where the proceedings in forfeiture took place.

ERROR to the Circuit Court of the United States for the District of Kansas; the case being thus:

An act of Congress of July 17th, 1862, "to seize and confiscate the property of rebels," provided, that if any persons in the then rebel States being engaged in armed rebellion against the government of the United States, or aiding or abetting such rebellion, shall not, within a time specified, cease to aid, countenance, and abet such rebellion, and return to his allegiance to the United States, "all the estate, property, money, stocks, and *credits* of such persons, shall be liable to seizure as aforesaid," and it was made the duty of the President to seize and use them as aforesaid, or the proceeds thereof. The statute further enacted, "that to secure the condemnation and sale of *any* such property, proceedings *in rem* shall be instituted in the name of the United States," in the District Court; and that the proceedings shall conform as nearly as may be to proceedings in admiralty and revenue cases; "and if said property, whether real or personal, shall be found to have belonged to a person engaged in rebellion, or who has given aid or comfort thereto, the same shall be condemned as enemies' property."

This act had now three times been before this court for construction. It came up once in *Pelham* v. *Rose*,* where the court took a distinction between a promissory note, the *evidence* of a credit and the credit itself; and held that when the debtor had given to his creditor a promissory note, and that note was in existence, *and was the thing proceeded against*, it was necessary to the legal service of any monition that

* 9 Wallace, 103.

the marshal should seize and take *it* into his possession and control. The corollary was, that when the note, at the commencement of and during the pendence of proceedings to confiscate, was beyond the jurisdiction of the marshal, there was no due service and no confiscation.

The statute came up for consideration at a later date in *Miller* v. *United States.** 

In that case a libel had been filed under the act to confiscate railroad stocks belonging to a rebel, and the notice, instead of being served on the owner, was served on the officers of the railroad company.

The court held that the service was good. It said that "the act of Congress made it the duty of the President to cause the seizure of all the estate, property, money, stocks, *credits*, and effects of the persons described, and in order to secure the condemnation and sale of such property after its seizure, directed judicial proceedings *in rem* to be instituted. It contemplated that every kind of property mentioned could be seized effectually in some mode. It had in view not only tangible property, but that which is in action. It named stocks and credits; but it gave no directions respecting the mode of seizure. It was, therefore," the court said, "a fair conclusion that the mode was intended to be such as was adapted to the nature of the property directed to be seized, and in use in courts of revenue and admiralty. And it was legitimate," the court added, "in certain proceedings in courts of admiralty, to attach *credits* and effects of such an intangible nature that they cannot be taken into actual possession by the marshal, and the mode of attachment was by notice, dependent upon statutory enactment."

The court accordingly held that the confiscation and sale had made a valid transfer of the stock.

The act came up a third time, in *Pelham* v. *Way*, reported in an earlier part of this volume,† where the court said "that undoubtedly a *debt* or *credit* was capable of seizure under the confiscation acts, and of subsequent condemnation and

---

\* 11 Wallace, 296.          † *Supra*, 196. See the case.

sale;" though the court there held that the proceeding not having been against the *debt* or *credit*, but only against the material evidence of it, and that material evidence having been out of the marshal's jurisdiction, and not having been seized, no confiscation of anything had taken place.

The statute thus above explained being in force, an information was filed by the district attorney in the District Court of the United States for the District of Kansas against a bond, dated May 28, 1860, executed by Lawrence Kennedy to Edward S. Brown, and secured by mortgage made and acknowledged by said Lawrence and Eliza his wife, on the same day, and on it recorded. The information prayed that process might issue against the bond and mortgage, and against "the *estate, property, claim, credits, and rights thereto and therein belonging to said Edward S. Brown,* to enforce the forfeiture thereof." Following this information a warrant was issued on the 28th of March, 1863, to the marshal of the district, commanding him to "attach said bond and mortgage, and the *estate, property, claim, credits, and rights thereto and therein belonging to the said Edward S. Brown,*" and to retain the same in his custody to await the further order of the court, giving notice to all persons claiming the same to·appear on the 20th of April, 1863, and show cause, if any they had, why the property should not be condemned as forfeited. To this warrant the marshal made return that he had attached the "bond, mortgage, and *credit,*" and had cited Lawrence Kennedy and Eliza Kennedy (the obligors and mortgagors), and all other persons having, or pretending to have, any right, title, or interest therein, as he was commanded. Then followed the decree of the court, entered May 5th, 1863, which, after reciting the marshal's return that he had attached the bond and mortgage, *credits,* and property, and given due notice, after reciting also that proclamation had been made, and that default had been entered, ordered that "the said bond, mortgage, and credit" be condemned and declared forfeited to the United States. The decree also ordered Kennedy, one of the obligors and mort-

gagors, to pay the debt into the court for the use of the United States, and in pursuance of the decree payment was made to the officers of the court.

In 1868 Brown obtained a pardon from the President, and on his application, previously made, the District Court ordered that all the money that had been collected under the confiscation decree by the officers of the court should be paid to him, after deducting therefrom some unpaid legal costs. And subsequently he caused to be filed in the confiscation proceedings a petition praying for judgment in his favor against those officers for the money. In point of fact, however, Brown received nothing on account of the order.

In this state of things Brown filed a bill in the court below, the Circuit Court for the District of Kansas, against Lawrence Kennedy and wife for the foreclosure of the mortgage. The principal defence was that the mortgage and the debt secured by it had been confiscated under the act of Congress; the defendant asserting also that by coming in to get the money produced by the confiscation, the complainant was estopped from proceeding by way of foreclosure. This defence was the less pressed, as the complainant expressly disclaimed wanting more than one satisfaction. As matter of fact, it was admitted by a statement of facts agreed on, that Brown, the complainant, was, and always had been, a resident of Virginia, and from June, 1860, till September, 1865, had continuously, at his home, in that State, the bond and mortgage, and that neither of the instruments was, during any part of that term, in the District of Kansas.

The court below dismissed the bill; and from its action herein, this appeal came.

*Mr. E. S. Brown, for the appellant:*

The court held in *Pelham* v. *Rose*, and *Pelham* v. *Way*, that the note, being capable of manual caption, must be taken into the actual custody of the marshal to constitute a valid seizure, and without this the court cannot adjudicate the condemnation thereof. In the appeal now before the court, it is part of the case as agreed on and admitted, that there

was no seizure of the bond and mortgage by the marshal for the District of Kansas; but that at the time of the said pretended confiscation proceedings, the bond and mortgage were without the District of Kansas, and within the exclusive possession and control of Brown, at his home in Virginia, so that the court acquired no jurisdiction thereof.

The whole argument, then, of the other side, must rest on the use of the word *credit* in the proceedings.

But this word in the marshal's return can mean nothing but the bond and the mortgage. He describes the bond and mortgage, and nothing else; and when he says "the following described bond, mortgage, and *credit*," to wit, he means the bond and mortgage, and nothing else. He uses the word (credit) as a synonym with them. On this return, specially hinges the jurisdiction of the court. No matter what had been done before, if the official act of the marshal did not bring the *res* within the territorial jurisdiction of the court, no jurisdiction was acquired over the subject.

Further indeed. If the marshal had adopted the language of the information and the warrant, and after the words, "the bond and mortgage" he had added "and the estate, property, claim, credits, and rights *thereto and therein* belonging to the said Edward S. Brown," that return would have comprehended no other *res* than Brown's bond and mortgage. To pretend that the owner's right to the *res* may be seized in one territorial jurisdiction, while the *res* is in another, is far beyond what was ever maintained in any court. Can it be maintained that the owner's right to his horse may be seized in Kansas, while the horse is in his quiet possession in Virginia? or, that the captain's right to his ship may be seized in Kansas, while the captain is in command, and the ship securely sailing in mid-ocean? The forfeiture of the horse, or ship, or bond and mortgage, is nothing but the forfeiture of the owner's "estate, property, claim, credits, and rights *thereto and therein*."

*Miller* v. *United States* does not interfere with the position taken above, nor the views expressed thereon. It is distinguished therefrom in *Pelham* v. *Way.*

*Messrs. E. Stillings and T. P. Fenlon, contra.*

Mr. Justice STRONG delivered the opinion of the court.

The bill was for the. foreclosure of a mortgage, and the principal defence set up is that the mortgage and the debt secured by it had been confiscated under the act of Congress of July 17th, 1862. If it had been, the complainant was not entitled to a decree of foreclosure, and his bill was properly dismissed.

We are unable to perceive why the record of the proceeding in the District Court of the United States for the District of Kansas, on which the defendant chiefly relied, does not show an effective confiscation of the debt, and its forfeiture to the United States, as well as satisfaction thereof by the mortgagors. Doubtless it is true that the court had no authority to decree confiscation of anything which had not by seizure of the marshal been brought within its jurisdiction. Seizure is essential to confer jurisdiction. But the marshal's return that he had attached the bond, mortgage, and credit, conclusively establish that a seizure was made, and that the subjects of the seizure were within the jurisdiction of the court. In this collateral proceeding the complainant is not at liberty to traverse the marshal's return. An attempt was made to traverse it, in part at least, as appears from the agreed statement of facts. It is recited therein that from June, 1860, to September, 1865, continuously, Edward S. Brown had in his possession at his home in the State of Virginia the bond and mortgage, and that during this whole period they were not in the District of Kansas. From this we are expected to infer that the marshal could not have seized them. We can, however, make no such inference against the marshal's return, without disregard of the established rule that such a return is conclusive of the facts stated by it.

The next position taken by the appellant is that, at most, only the bond and mortgage were confiscated, leaving the debt, of which the bond and mortgage were mere evidences, still due. In support of this we are referred to *Pelham* v.

*Rose,** and *Pelham* v. *Way,* more recently decided.† If this were so, it would not be easy to see how the appellant could make use of the mortgage to collect the debt, when his title to the mortgage no longer exists—when it has been adjudged forfeited to the United States. But *Pelham* v. *Rose* and *Pelham* v. *Way* furnish no support to the position that the debt due from the mortgagors was not confiscated as well as the instruments which the parties had adopted as the evidences of the debt. In those cases the information was against a promissory note, and nothing else. So was the warrant or monition. The marshal returned that he had arrested the property mentioned in the warrant, and the court decreed condemnation of " the note." The nature of the proceeding is clearly shown in the opinion of Mr. Justice Field in *Pelham* v. *Rose,* where he said: " In the case at bar, a visible thing, capable of physical possession, is the subject of the libel. It is the promissory note of Pelham which constitutes the *res* against which the proceeding is instituted, and not a credit or debt, which the note is supposed by the defendant's counsel to represent. . . . The object of the present libel is to reach the note itself. This appears at every stage of the proceedings; in the information; in the monition to the marshal; in his return; in the decree of the court, and in the sale made." It was for this reason it was ruled in *Pelham* v. *Way* that the debt was not confiscated.

But the present case, as is apparent from the record, is very different. Not only were the bond and mortgage given to Brown informed against, ordered to be attached, seized, and condemned, but so, also, was the credit. We have seen that the marshal was commanded to attach the bond and mortgage *and the estate, property, claim, credits, and rights thereto and therein belonging to the said Edward S. Brown.* What is the credit in a bond and mortgage, if it is not the debt secured or evidenced by them? What are rights in a mortgage, as well as to it, if they are not the rights of the

---

mortgagee to claim and receive the money secured by the mortgage? The ownership of the written instrument is a distinct thing from ownership of the right or credit of which the instrument is the evidence. The word "credit" does not describe ownership of a mortgage, nor do the words "rights therein." The warrant was therefore directed against the debt, as well as against the written evidence of it. The marshal returned that he had attached the bond, mortgage, and credit, and the decree condemned expressly the bond, mortgage, and credit. That the debt was attachable in confiscation proceedings was held by this court in *Miller* v. *The United States*,* and it was ruled that attachment or seizure could be made without manual caption of the visible evidences of the credit. To the doctrines laid down in that case we adhere; and, as the marshal's return conclusively establishes that the credit was seized, and was therefore within the jurisdiction of the court, we must hold that the decree of condemnation was warranted, and that the debt was effectively confiscated.

It is, perhaps, not necessary to say more. Yet it may be added that the appellant seems to have acquiesced in the decree of condemnation, and in the subsequent payment of the debt by the mortgagors to the officers of the court. The agreed statement of facts exhibits that in 1868, after he had obtained a pardon, on his application the District Court ordered that all the money that had been collected under the confiscation decree by the officers of the court should be paid to him, after deducting therefrom some unpaid legal costs. And subsequently he caused to be filed in the confiscation proceedings a petition praying for judgment in his favor against those officers for the money. Whether, after this, he could assert that the proceedings by which the money was collected were a nullity we will not determine. It is enough that, in our opinion, the debt due originally to him from the mortgagors was confiscated before his bill was filed.

DECREE AFFIRMED.

_____

* 11 Wallace, 268.

Mr. Justice DAVIS: I concur in the judgment in this case on the ground that Brown waived his rights when he appealed to the confiscation proceedings, and by petition prayed the court to have the money realized from those proceedings paid over to him; which petition was granted by the court.

Mr. Justice FIELD dissented from both the judgment and the opinion.