## RIGNEY v. DE GRAW et al.

(Circuit Court, W. D. Missouri, W. D. February 26, 1900.)

1. LIMITATION—INTERRUPTION OF RUNNING OF STATUTE—EFFECT OF SUIT.

   The continuity of possession of one in the actual occupancy of real estate under claim of title is not broken, so as to affect the running of the statute of limitations in his favor, by a judgment of ouster rendered in an action of ejectment for the land, brought against one not at the time in privity with him in title or possession, and where he was not made a party and did not appear or employ counsel in such action.

2. PROCESS—OFFICER'S RETURN—COLLATERAL ATTACK.

   The return of an officer of service of a summons is not conclusive, as between strangers to the litigation.

3. MORTGAGES—RIGHT OF REDEMPTION—LIMITATION—POSSESSION UNDER VOID FORECLOSURE.

   Where a mortgagee enters into possession of the mortgaged premises under a void foreclosure, he is presumed to hold as mortgagee in possession, and limitation does not run in his favor, or in favor of his grantees, against a suit by the mortgagor to enforce the right of redemption, and to an accounting, which is a continuing right, unless there is an actual notice to the mortgagor that they claim to hold in some other right, adverse to the mortgage.

4. DEEDS—PROOF—CERTIFIED COPIES OF RECORD.

   Under Rev. St. Mo. 1889, §§ 2433–2436, which embody the provisions of a statute first enacted in 1843, and carried forward into Rev. St. 1855, p. 366. § 51, certified copies of records of deeds to military bounty lands acknowledged without the state are only admissible in evidence upon proof of the loss or destruction of the original instrument; the only exception being where the record was made one year prior to 1887 and 30 years prior to its offer in evidence, so as to entitle it to admission as the record of an ancient deed, under the provisions of Rev. St. 1889, §§ 4864, 4865.

5. EQUITY—PRAYER—EFFECT OF AMENDMENT OF BILL.

   The prayer of a bill to enforce the right of redemption from a mortgage, and to an accounting from defendants as mortgagees in possession, is not narrowed by an amendment asking cancellation of the mortgage as invalid, but remains intact, and authorizes the granting of the relief therein prayed for, in case the validity of the mortgage is sustained.

This was a suit in equity for the cancellation of a mortgage, or, if held valid, for the enforcement of the right of redemption and to an accounting from defendants as mortgagees in possession.

Geo. H. English, for complainant.

Lander, Johnson & Lander and L. H. Waters, for defendants.

PHILIPS, District Judge. This is a bill in equity, the general object of which is to vacate and set aside a deed of trust to 160 acres of land situate in Carroll county, Mo., on the grounds—First, that the grantor, Alice Rigney, was insane at the time of its execution, and has continued so to be; second, because the said deed was without sufficient consideration; and, third, if the trust instrument be found not to be invalid, the bill seeks to redeem, and, as the mortgagee has long been in possession of the mortgaged premises, for an accounting between the parties. The cause was referred to the master, who has filed his report and findings, adversely to the complainant. Ex-

ceptions thereto having been filed by the complainant, the same have been heard by the court.

The evidence shows that one James Rigney, who was the husband of said Alice Rigney, on the 16th of July, 1868, received a tax deed from the collector of Carroll county, Mo., for the land in question; that he immediately thereafter entered into the possession and made valuable improvements thereon, and this possession continued to the time of his death, in 1871, when it devolved upon his heirs and administrator. Under the administrator's sale, in September, 1872, his widow, Alice Rigney, became the purchaser, and received the administrator's deed therefor. This being military land, within the meaning of the statute of limitation, it is conceded, in argument, that after the continued adverse possession by Alice Rigney and her predecessors for a period of two years, if they did so hold, "no action for the recovery" thereof could be maintained by any claimant. Section 1, c. 191, Gen. St. Mo. 1865.

Much of the report of the master and the argument of respective counsel is occupied with the question as to whether or not the continuity of possession was broken by the institution of an action of ejectment for possession of this land by one William H. De Graw against one Francis E. Rigney, in 1869, in the United States circuit court for the Eastern district of Missouri, wherein judgment of ouster was rendered in October, 1871. While execution was issued on this judgment, the writ was not executed, as hereinafter more particularly stated. It does not appear that Francis E. Rigney was in possession of the land as the tenant of James Rigney, or that he or any one else notified James Rigney of the institution or pendency of said action; nor does it appear that James Rigney either appeared thereto or employed counsel therein. The record of this proceeding, being clearly res inter alios acta, was inadmissible in evidence in this suit. Judgments bind only the parties to the record and their privies in blood, or estate, or in law. No one is privy to a judgment whose succession to the rights of property thereby affected occurred previous to the institution of the suit. Freem. Judgm. par. 162. See, also, Henry v. Woods, 77 Mo. 277. Even if Francis E. Rigney had been in possession as tenant under James Rigney, unless the tenant had notified the landlord, or the landlord had employed counsel or otherwise defended, the judgment did not conclude him, or affect the running of the statute of limitation in his favor and that of his privies in estate. Chirac v. Reinicker, 11 Wheat. 280–296, 6 L. Ed. 474. Francis Rigney in his deposition testifies that he was not in possession of the land at the time of the alleged service of writ of summons in said action, that he was not then the tenant of James Rigney, and that the writ was not even served upon him, nor did he employ counsel and defend the action. It is true that the return of an officer cannot be collaterally attacked by the party affected thereby; but this is not a suit against Francis Rigney or any one claiming under him. As between these parties, strangers to that record, the officer's return of service and the judgment therein conclude no issue of fact or law. In view, however, of the real merits of this suit, the effect of that proceeding in ejectment is quite immaterial, and the

court would have passed it by without comment, but from an apprehension that its silence might be construed into an acquiescence in the conclusion of the master that that judgment concluded this complainant.

The evidence further tends to show that a writ of ouster issued on said judgment in January, 1872, and that under the advice of Col. Waters, who was then acting as attorney for Mrs. Rigney, in order to prevent its execution, a contract was concluded through him, for her, and the plaintiff in said execution, through the defendant, Hamilton De Graw, acting for his brother, said William H. De Graw, under a power of attorney, whereby it was agreed that she would buy the interest of said William H. De Graw in said land for the sum of $2,000, payable as follows: $200 in cash, and the balance in promissory notes of $360 each, payable as follows: April 1, 1873, April 1, 1874, April 1, 1875, April 1, 1876, and April 1, 1877,—each bearing interest at the rate of 10 per centum per annum, and if interest not paid annually to become part of principal and bear the same rate of interest. There is some uncertainty in the evidence as to whether or not this contract was consummated by the execution and delivery of a deed from William H. De Graw, by Hamilton De Graw, attorney in fact, or whether the deed, if then made, was executed solely in the name of Hamilton De Graw. The deed was never recorded; and as Mrs. Rigney, since the institution of this suit, has been under guardianship as an insane person, she is unable to testify respecting this issue. It is, however, quite clear to my mind that this controversy is rightfully to be determined upon the assumption that the transaction in question was closed up as between Hamilton De Graw, as the vendor, and Alice Rigney, as the vendee. The defendants are certainly estopped from asserting the contrary for the following reasons: The defendants put in evidence a quitclaim deed from William H. De Graw to Hamilton De Graw, executed on the 14th day of August, 1896, which recites that it is made "in confirmation of a certain deed of conveyance executed by said William H. De Graw to said Hamilton De Graw, conveying said land, of date some time prior to October, 1872, the exact date of which deed is not remembered, which said deed is said to be lost or accidentally destroyed, and never recorded." This deed was made subsequent to the institution of this suit. On the 23d day of October, 1872, the contract aforesaid was consummated by Mrs. Rigney executing to one Thomas D. Price, trustee for Hamilton De Graw, a deed of trust on said land to secure the payment of the purchase money evidenced by said promissory notes, which notes were made payable to Hamilton De Graw alone. At that time, according to the recitations in said quitclaim deed, the title of William H. De Graw, whatever it was, in the land, was in Hamilton De Graw, and Hamilton De Graw, by accepting the deed of trust, recognized Mrs. Rigney's right to convey as the owner of the fee; while Mrs. Rigney, by the words of grant, "bargain, grant, and sell," etc., is estopped from denying that she had the estate conveyed. Section 8, c. 109, p. 444, 1 Gen. St. Mo. 1865. The situation, therefore, is this: Alice Rigney, as mortgagor, was left in possession of the land, while Hamilton De Graw assumed and sustained the relation of mortgagee,

216

the beneficial owner of the mortgage notes. Thereafter, on the 7th day of December, 1875, said trustee, presumably acting under the direction of Hamilton De Graw, undertook to foreclose said deed of trust by a sale in pais, and executed of that date a deed as trustee to said Hamilton De Graw, who thereupon entered into the possession of the premises. This foreclosure was premature and void, for the reason that all the notes secured by the trust deed were not due, and there was no power of sale conferred on the trustee until after the maturity of all the notes. Some time subsequent to the said entry of Hamilton De Graw, he sold the land to the co-defendant, George Stout, the date of which is not disclosed by the evidence; but De Graw and his grantee have been in the possession of the land and the perception of the rents and profits continuously from the 7th day of December, 1875, to this time.

The first contention of the complainant is that at the time of the execution of said notes and deed of trust she was insane, and has so continued thenceforth, and therefore the right of action to avoid said instruments and recover possession of the land is not barred. The master has found this issue of fact against the complainant. It is but candor for the court to say that, perhaps, its mind may be somewhat prejudiced against this conclusion of the master from the fact that in the case of this complainant, by her guardian, as plaintiff, against Plaster (88 Fed. 686), affirmed by the court of appeals (38 C. C. A. 25, 97 Fed. 12), on practically the same evidence in its essentials, tried before this court, a jury found this issue for the plaintiff. Some of the depositions read on behalf of the defendants touching this issue should have been excluded for irregularity in the matter of notice, dedimus, and time of the taking; and the court attaches far less credence and force to the testimony of William Rigney on the part of the defendants than did the master, as this witness certainly appears in this relation in a most unfavorable light. But the court will defer to the master's conclusion on this issue, with the exception that it finds from the overwhelming weight of evidence, with all the antecedent and correlative circumstances, that this woman for several years prior to 1895 was by reason of mental infirmity incapable of protecting her property interests, either in or outside of court, and that in 1893 she was a proper subject of adjudication in lunacy. In February, 1895, she was adjudged insane by the probate court of Lafayette county, Mo., and Charles Lyon was appointed and qualified as her guardian, who instituted this suit on the ———— day of January, 1896. Why, then, is not the complainant entitled to an accounting with the defendants and to redeem this land if the mortgage is not satisfied, and for a decree of possession if the mortgage is satisfied? Where a mortgagee enters into possession of the premises before foreclosure, and before satisfaction of the debt, no matter how he obtains the possession, the mortgagor cannot eject him without satisfaction of the debt. The mortgagor cannot maintain such action, even upon claim by him that the debt has been satisfied, where the mortgagee controverts. He will be driven to his bill in equity for an accounting, and for leave to redeem by paying whatever sum may be found owing by him.

In Pomeroy v. Winship, 12 Mass. 514, it was held, when the mortgagee enters after condition broken, that:

"It shall be presumed that he entered for that cause, and the time for that foreclosure shall run from that entry. Where there has been an entry before the breach, the mortgagee may commence his foreclosure without any new entry. * * * It must be a correlative principle that where the mortgagee is in, the condition being broken, the mortgagor, to secure his rights, may elect to consider him in as claiming to foreclose, and that a tender of performance made to him when thus in possession shall avail to the mortgagor as much as if there had been a public entry, or a judgment for possession, because the condition was not performed. * * * For the mortgagee may sometimes gain possession contrary to the real understanding of the parties; and, if he should choose to continue without any act showing his intention to foreclose, the mortgagor would be deprived of his right to redeem, unless he has the right to consider him in for condition broken, when that event has actually taken place. * * * It is immaterial whether he enter under the deed from the mortgagee or as disseisor; for it ought not in either case to be in his power to prevent the creditors for the mortgagor from availing themselves of the equity of redemption. If he entered by deed, that deed might have been made for the very purpose of extinguishing the right of redemption to the prejudice of the creditors. If he entered as a disseisor, it would be still more extraordinary that he could procure to himself an absolute estate under a mortgage, merely because, having obtained a wrongful seisin, he should choose not to avail himself of his right to foreclose the mortgage. He must, therefore, be considered as in under the assignment of the mortgage; and the mortgagor or his lawful assigns have the right to consider him as holding under the mortgage deed with the view to claim an absolute estate under it, the condition having been broken when he took the assignment. And it is in the election of the mortgagor at any time, at least within 20 years, to claim his right to redeem by bringing his bill in equity after tender of performance according to the condition of the deed. The mortgagee suffers nothing by this, because he may hasten the foreclosure by a declaration of the purpose for which he holds, and he is completely indemnified before any judgment against him for redemption can be entered."

In Cooke v. Cooper, 18 Or. 142, 22 Pac. 945, 7 L. R. A. 273, it is held that where the mortgagee at a void foreclosure sale becomes the purchaser of the mortgaged premises, and enters into the possession, and then conveys to a third party, such deed operates as an assignment of the mortgage debt, as well as the mortgage, to the grantee; and each successive deed to the land by persons holding under such mortgage must have the same effect. The court said:

"If for any cause in the foreclosure suit the proceeding is ineffectual to foreclose the mortgage, and the mortgagee purchases at a sale under such void proceeding, and enters into the possession under such sale, his relation to the mortgaged premises is that of a mortgagee in possession. * * * If the mortgage was not foreclosed, it remained in full force and unsatisfied, and by the conveyance set out in the findings was owned by Cooper at the time he placed the erections on the lots, and in such case his relation to the lands was that of a mortgagee in possession. * * * While the mortgagee is not permitted to maintain a possessory action to recover the mortgaged premises by reason of the default of the mortgagor, still, if he can make peaceable entry upon the mortgaged premises after condition broken, he may do so, and maintain such possession against the mortgagor and every person claiming under him subsequent to the mortgage, subject to be defeated only by the payment of the debt."

Conformably to the same recognized rule, in Smith v. Smith, 15 N. H. 55, it is held that, after the mortgagee has entered into possession, his deed will transfer his right to the possession to his grantee,

who by virtue thereof may defend against a writ of entry brought against him by the mortgagor. After discussing the validity of the writ under which the party claimed to have entered, the court said:

"He was, then. if the notes had not been paid, a mortgagee in possession by virtue of a process issued by a court of competent jurisdiction. He had the right to retain the possession as against the mortgagor, and this right might be conveyed, so that his grantee would stand in his place, and would hold whatever right of possession was owned by the grantor."

The New York court of appeals, in Miner v. Beekman, 50 N. Y. 337, independent of the provisions of the local statute, has furnished a forceful exposition of the common-law rules applicable to the question under consideration. There the mortgagor, after the execution of the mortgage, had conveyed to a third party. After maturity of the mortgage debt the mortgagee foreclosed, but without making the subsequent grantee a party to the foreclosure proceeding. The suit was by the subsequent grantee to redeem, who lost, because his right of action was barred by the 10-years provision of the local statute; the mortgagee not having entered under him, but under a foreclosure good as against the mortgagor. The court, after conceding that after maturity of the mortgage debt the mortgagor has the right to redeem, controverts the proposition that such right of action on behalf of the mortgagor is concluded by the statute of limitations where the mortgagee is in possession under the mortgage. The court, inter alia, said:

"It is an acknowledged branch of equity jurisdiction to remove clouds from the title at the suit of the owner of the fee. Such owner has the right to invoke this aid. But must he do it within 10 years after the commencement of the cloud, or may he do it at any time during its existence while he continues such owner? My conclusion is that this is a continuing right that may be asserted at any time during the existence of the cloud,—never barred by the statute of limitations while the cloud continues to exist. This results from the continuing character of the right, which is equally as potent after the lapse of 11 years as it was during the first 10. It is a right inherent in the owner of the fee to have clouds removed, and apparent, but not real, incumbrances discharged of record at all times. While the owner of the fee continues liable to an action for foreclosure of the mortgage, or for the payment of any incumbrance upon his lands which is past due, he has a continuing right to the aid of equity to determine the amount, if uncertain, and to compel its discharge upon payment; and an action to enforce this continuing right cannot be barred by the statute of limitations, for the reason that it is continuing."

After conceding that the right to bring the action of redemption did not accrue until the defendants or their grantor entered into possession, the court further observed, in respect of the local statute of limitations, that:

"The statute, I think, would not then commence running, had the defendants or their grantor entered and continued in possession, avowedly as mortgagees, and would not run while they so held, for the reason that it is a continuing right of the owner to pay off and discharge a mortgage, and by so doing regain possession of the land."

And the reason why the court applied the statute of limitations to a suit of the grantee of the mortgagor was because the defendants did not enter and hold possession under the mortgage, but claimed adversely, as purchasers under a deed from the master on the fore-

closure sale, which was good as against the mortgagor, and, of course, was after maturity of the debts secured by the mortgage. But in the case at bar the defendants entered after the void sale of foreclosure as against the mortgagor, and therefore occupied apparently no other rightful position than that of a mortgagee in possession.

In Haskins v. Hawkes, 108 Mass. 382–384, after the death of the mortgagee, his heirs entered and took possession of the premises, and undertook to foreclose, on the assumption that they were entitled to do so; but their act was held to be, in effect, that of an administrator de son tort. After a lapse of eight years the mortgagor brought suit to redeem. The court said:

"As they entered under the mortgage, claiming under it, for the purpose of foreclosing it, and alleged in their answer that they have foreclosed [just as the defendants here do], they are not to be permitted to shield themselves against accountability by saying that they have occupied as mere strangers and disseisors. The plaintiff is entitled to redeem, and to have the rents and profits applied on his notes."

No more concise or comprehensive statement of this doctrine can be found than that expressed by Chief Justice Dixon in Quinn v. Quinn, 27 Wis. 170, in which he said:

"It is the entry which decides the character and quality of the possession, and these remain unchanged until the possession has been actually surrendered, or until the tenant has avowed his intention not to hold in subordination to the title under which he entered, and given notice thereof to the party holding such title, or until an eviction in due form of law and possession taken or continued under paramount title."

So Tyler, Ej., p. 887, says:

"In all cases where a party is in possession of land in privity with the rightful owner, nothing short of an open and explicit disavowal and disclaimer of a holding under that title, and assertion of title in himself, brought home to the owner, will satisfy the law. When a fiduciary relation exists between the possessor and the owner, a clear, positive, and continued disclaimer and disavowal of the title, and assertion of an adverse right, to be brought home to the party, are indispensable before any foundation can be laid for the operation of the statute of limitations. Otherwise, the grossest injustice might be practiced; for without such notice the owner of the land might well rely upon the fiduciary relations under which the possession was originally taken and held, and upon the subordinate character of the possession as the legal result of those relations."

See, also, Budd v. Collins, 69 Mo. 129.

But the evidence in this case tended to show that, at the time of this pretended foreclosure sale and entry of the mortgagee into possession, she was not residing in Carroll county, Mo.; and it does not appear that she had any notice of such attempted sale, and especially had she no notice, even if she had been altogether intelligent and capable of looking after her business affairs, that the defendant De Graw, if in possession, was asserting any claim adverse to his rights as mortgagee. It was not sufficient, to change the relation of mortgagee in possession which the law presumptively attached to his attitude, that he simply remained in possession, exercising the usual acts of ownership in no wise inconsistent with the fiduciary relation of mortgagee. The law is that he must do some affirmative act to bring home notice to the mortgagor and owner of the land that

he repudiates his fealty and asserts an independent possession. Therefore the testimony of the defendant that he took possession and has ever since claimed to be the owner in fee, adversely to the mortgagor, ·is of no consequence, without such fact being notified to the complainant. Were the law otherwise, it would be instinct with injustice, as the mortgagee, contrary to the express provisions of the mortgage deed, in the absence and without the knowledge of the mortgagor, might undertake to foreclose, as in this case, in pais, and under a fraudulent deed slip into possession, and without any actual notice to the mortgagor of his purpose to throw off his allegiance, by merely continuing the possession which the law, without more, would attribute to a possession under allegiance, might obtain, as in this case, the fee to property far in excess of the value of the amount of the indebtedness thereon. As applied to the facts of this case, and to the mental condition, such as the evidence, taken in its most favorable aspect to the defendant, shows this woman to have been in since 1873, it seems to me to be the especial office of a court of equity to afford her, through her guardian, the right of redemption.

As said by Mr. Justice Miller, in Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328, in respect of the time when a party should exercise his option to set aside a sale:

"This has never been held to be any determined number of days or years, as applied to every case, like the statute of limitations, but must be decided in each case upon all the elements of it which affect that question."

To defeat this right of redemption in the complainant, the defendants offered in evidence a certified copy from the recorder's office of Carroll county, Mo., of what purports to be a deed of conveyance from Mrs. Rigney, granting this and other military lands in said county to one William H. Stevenson, of date August 26, 1875. This deed describes Alice H. Rigney as of Chicago, Cook county, Ill., and Stevenson of Fruit Fort, Mich.; and the deed purports to have been acknowledged before a notary public of said Cook county, Ill. The introduction in evidence of this deed·was objected to by complainant's counsel, for the reason that there was no proof offered of the existence of the original deed, nor of its loss or destruction; nor does the evidence show that any effort whatever was made by the defendants to discover the whereabouts of said Stevenson, or to obtain the original deed. It is conceded that this land is a part of the military bounty land designed for the benefit of the soldiers of the War of 1812. Because of the repeated attempts to get upon the records of the county where such lands were located fraudulent and forged deeds, the legislature of this state, as early as 1843, as a safeguard against the use of certified copies of such deeds (acknowledged without the state) in evidence, affecting the title to such lands, required that such certified copies could only be admitted in evidence "upon proof of the loss or destruction of the original instrument." This was carried forward in the statutes of 1855 (Rev. St. 1855, page 366, § 51), and received construction in Barton v. Murrain, 27 Mo. 235, in which it was held that the other provisions of the statute, which authorized the reading in evidence of certified copies of conveyances

when the original is not in the control or possession of the party, his agent, or bailees, have no application to such military lands. This ruling was reaffirmed in Crispen v. Hannavan, 50 Mo. 415, 416, and is again recognized as law in Id., 72 Mo. 548, with the only exception thereto as to a deed of record 30 years prior to the offer in evidence of the certified copy, where the same had been recorded 1 year prior to 1887. A certified copy of such deed was admitted in evidence in Rigney v. Plaster, 88 Fed. 686 (affirmed in 38 C. C. A. 25, 97 Fed. 12), on the ground that the present statute as to certified copies of ancient deeds of record for 30 years applies to all conveyances. But in the case at bar the deed in question had not been recorded, when offered in evidence, over 24 years. The master is in error in his conclusion of law that the provision of the statute of 1855, in respect of such deeds, has been dropped from the present statute. The same provision in respect of deeds to such lands is in the present statute in sections 2433 to 2436, inclusive. The last section declares that:

"Copies of such instruments or records of the same, duly certified by the recorder of the county in which the same may have been recorded, shall, upon proof of the loss or destruction of the original instrument, be read in evidence, with like effect and on the same conditions as the original instrument."

This is a wise and provident provision of the statute, as illustrated by the case at bar. There is no evidence that Mrs. Rigney was in Chicago at the time this deed purports to have been executed. The existence of such a man as William H. Stevenson is not shown. There is no evidence that Mrs. Rigney had such deed recorded, nor any evidence as to what became of it. Without considering any of the other objections made to the admission in evidence of this deed, for the reasons above stated, it must be excluded.

The master in his report makes some question as to whether the state of the pleadings on the part of the complainant is sufficient to justify a decree of redemption. The allegations and prayer of the original bill are amply sufficient to authorize this relief. It expressly prays that the court will "ascertain and determine what, if any, is the liability of the complainant to the said defendants, or either of them, and what, if any, lien, claim to, or interest in said real estate they, or either of them, have, and also the value of the rents, issues, and profits of the same during all of said time since the 7th day of December, 1875," followed with a prayer for "a full accounting between the parties hereto, and ascertain and determine by its decree what sums, if any, remain to be paid by your oratrix in full satisfaction of said debt, if any such debt there be, and in complete redemption of said land from any such liens, claims, or demands, or deed of trust," and "that the court will decree upon judgment of said balance, if any, and without judgment if no balance be found, that said deed of trust be satisfied, canceled, and discharged, and for nothing taken, and that the decree herein shall be made and declared a cancellation of the same, and shall operate as a conveyance of said real estate to your oratrix, and that your oratrix have such other and further relief as the nature of the circumstances of this case may require, and to this honorable court may seem meet," etc. Surely this prayer, in the language of an old chancellor, "is as comprehensive as the Lord's

Prayer." While it is true that, in the supplemental and amendatory allegations, the complainant asks to have said deed of trust set aside and vacated on the ground of the alleged insanity of Mrs. Rigney, yet the original bill, with the amendments and prayers, constitutes a continuous pleading, leaving the original prayer for relief intact, in the event the court should find that the deed of trust was not voidable on the ground of insanity.

It then only remains to be ascertained what is the state of the accounting between the mortgagor and the defendants. Before the complainant can be let into the possession of the property, she must pay the principal and interest of the mortgage notes, and the defendants must render an accounting of the rents and profits realized from the use of the premises during their tenure. The $200, as a cash payment, presumably was paid by the mortgagor; and the debt secured by the deed of trust is represented by five promissory notes, dated January 16, 1872, for $360 each, payable, respectively, April 1, 1873, April 1, 1874, April 1, 1875, April 1, 1876, and April 1, 1877,— said notes bearing interest from date at the rate of 10 per cent. per annum, payable annually, and if the interest be not paid annually to become as principal and bear the same rate of interest. As the defendant De Graw did not enter into possession of the premises until December 7, 1875, the complainant would not be entitled to any credit on the accruing interest until December, 1876, when the defendant would have to begin to account for the annual rental value. The supreme court of this state, in Riney v. Hill, 14 Mo. 500, settled the rule for the method of computing interest, with rests of payments, which has ever since been recognized as the rule in this state. It is expressed as follows in the syllabus:

"Interest is first to be calculated on a demand up to the first partial payment; then add the interest to the principal, and deduct the payment therefrom; then cast interest on the remainder to the second payment, add the interest to the remainder, and deduct therefrom the second payment; and so on until the last partial payment, unless, in any case, the interest up to any payment shall exceed the payment, in which case such payment is to be deducted from the interest, and the excess of the interest is to be carried forward, without casting interest thereon, to the next payment that will discharge the excess."

The master, in his estimation of the rental, finds the reasonable rental for the first 15 years at $1.50 per acre, and $2.50 per acre thereafter. The court is satisfied, on an examination of the only evidence touching this rental value, that the master was led into an error in finding that the 15 years at $1.50 per acre ran from the entry of the defendant in 1875. The clear testimony of the witnesses was that, 15 or 20 years ago,—that is, from the time of the taking of the depositions in 1895,—the land was worth $1.50 per acre, and since that time $2.50 an acre. Fifteen years would carry it back to 1880, when the $2.50 per acre attached, which makes a radical difference. Calculated upon this basis, the result is that up to December 7, 1893, the principal and interest of the mortgage debt have been extinguished, with an excess of $246.85 in favor of the complainant; and, as the defendant Stout, presumptively, has continued the possession, an accounting to date would show a large balance sheet in favor of the complainant.

When the master furnished to the respective counsel first draft of his report herein, the defendants' counsel filed with him objection to his accounting upon the right of redemption, because he had failed to credit the defendants with the taxes paid and for the improvements made on the land. Thereupon the master made a supplemental report, stating that he had not given such credits for the reason that the defendants had failed to furnish any evidence thereof. The defendants did not ask the master to reopen the case, or to hear evidence touching this matter. The completed report was thereafter filed in this court, and the defendants have filed no exceptions thereto. This court has not been asked to reopen the case on this account, and no attempt has been made by the defendants to show that they, or either of them, have paid any taxes or made any improvements; and, even if the case were opened for such purpose, the large amount now due the complainant would doubtless exceed the sum of such taxes and improvements, if any, and would not affect the result. To avoid even the semblance of injustice to the defendants on this account, the court will not render decree against them, or either of them, for the rents and profits since December 7, 1893.

Decree will go in favor of the complainant in conformity with this opinion.