The corporation defendant demurs to the bill on the ground that it does not set forth facts showing that this court has jurisdiction to entertain a suit against it for infringement.

Leaving out immaterial words, the amended bill avers that defendant is a corporation organized under the laws of Pennsylvania, and is a citizen of the state of Pennsylvania, and has a regular and established place of business in the Southern district of New York; also that defendants (the other two defendants are individuals) have jointly used, and after notice, without license and in violation of complainant's right, continue and threaten to continue jointly to use, within this district, apparatus the same as in the letters patent claimed, etc. I am at a loss to see why the averments of the bill are not sufficient.

[2] 2. The marshal served the subpœna upon the defendant corporation "by exhibiting to Alfred J. Ostheimer, as secretary and treasurer of said company, at 227 Fourth avenue, the within original, and at the same time leaving with him a true copy thereof."

A motion is made to set aside this service, because it was not made by service upon the agent or agents engaged in conducting the business of the corporation in this district. Reference is had to the Jurisdiction Act of March 3, 1897. That act provides that when a corporation, not an inhabitant of a particular district, shall have committed acts of infringement and have a regular and established place of business in such district, service *may* be made upon the agent or agents engaged in conducting such business in the district. This language is permissive merely, and I see no reason why it should be construed as imperative. If the regular officers of a corporation, upon whom service may generally be made, are found here, where the company has a regular and established place of business, there is no necessity for a substituted service on some local agent.

3. When the order was made suspending the injunction, it was provided that:

"Unless the appeal is perfected, record and briefs printed, and appellant ready to argue same at the opening of March session of Circuit Court of Appeals, this suspension will be vacated, or the amount of the security increased."

There has been some delay, but the record has now been printed, and the appeal will be moved on the calendar to-day. The present motion to vacate suspension is therefore denied, with leave to renew, should the appeal not be heard at the April session because of any delay or fault of appellant.

---

UNITED STATES v. McIIIE et al.

(District Court, N. D. Illinois, E. D. March 28, 1912.)

1. GAMING (§ 60*)—CONDUCT OF OFFICERS—ILLEGAL ACTS.

In a raid by special agents of the United States and state police officers on certain offices, in which it was alleged a bucket shop was being operated in violation of Cr. Code, § 215 (Act March 4, 1909, c. 321, 35 Stat. 1130 [U. S. Comp. St. Supp. 1909, p. 1455]), without a search warrant, such officers had no authority to "hold up" the occupants with a revolver,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cut the telegraph wires, and seize the instruments, books, and records of the operators of the business.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. § 117; Dec. Dig. § 66.*]

2. SEARCHES AND SEIZURES (§ 3*)—WARRANT.

A warrant authorizing a search and seizure of personal property for alleged violation of law may be issued from the clerk's office on a bench warrant after direction by the judge on a verified petition.

[Ed. Note.—For other cases, see Searches and Seizures, Cent. Dig. §§ 2, 3; Dec. Dig. § 3.*]

3. SEARCHES AND SEIZURES (§ 3*)—ARREST—WARRANT.

Where an arrest of persons alleged to be engaged in operating a bucket shop was made without a warrant because of the absence of a marshal or deputy, seizures of personal property made at the same time were therefore unlawful.

[Ed. Note.—For other cases, see Searches and Seizures, Cent. Dig. §§ 2, 3; Dec. Dig. § 3.*]

4. SEARCHES AND SEIZURES (§ 5*)—RECOVERY OF PROPERTY—PETITION.

Where property was wrongfully seized by federal officers, and was held under claim of judicial process and therefore beyond the reach of a writ of replevin, the owner was entitled to recover the same by petition addressed to the court in which the seizure proceedings were had.

[Ed. Note.—For other cases, see Searches and Seizures, Dec. Dig. § 5.*]

5. SEARCHES AND SEIZURES (§ 7*)—CONSTITUTIONAL LAW (§ 252*)—EQUAL PROTECTION OF LAWS—"PERSON."

Since a corporation is a person within the federal Constitution guaranteeing to all persons equal protection of the laws, corporations are also within the protection of the fourth, fifth, and fourteenth amendments of such Constitution.

[Ed. Note.—For other cases, see Searches and Seizures, Cent. Dig. § 5; Dec. Dig. § 7;* Constitutional Law, Cent. Dig. §§ 728–731; Dec. Dig. § 252.*

For other definitions, see Words and Phrases, vol. 6, pp. 5322–5335; vol. 8, p. 7752.]

6. PROCESS (§ 141*)—RETURN—TRAVERSE.

Though a marshal's return is conclusive between the parties until set aside, and may not be traversed in a collateral proceeding, it is not conclusive as against strangers to the writ.

[Ed. Note.—For other cases, see Process, Cent. Dig. §§ 189–192; Dec. Dig. § 141.*]

Proceedings by the United States of America against Sidmon Mc-Hie and others. On petition of the Capital Investment Company for the return of certain personal property seized by federal officers in a raid on an alleged bucket shop operated by the Capital Investment Company. Granted.

James H. Wilkerson, U. S. Dist. Atty., and Robert W. Childs and John F. Voight, Assts. U. S. Atty.

Francis Adams, Jacob J. Kern, Joseph B. David, Hugh Ryan, and John A. Brown, for defendants and Capital Inv. Co.

SANBORN, District Judge. It appears that in December, 1910, petitioner was engaged in Chicago in running an alleged bucket shop, claimed by the officers of the government to be in violation of section 215 of the Criminal Code, relating to the use of the mail in car-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rying out a scheme to defraud. Petitioner was not indicted as a defendant. On the 15th of December, 1910, George M. Scarborough, special agent of the department of justice, made a complaint before Mark A. Foote, United States commissioner, in respect to the existence of a scheme to defraud, whereupon a warrant was issued by the commissioner for the arrest of Sidmon McHie and 17 other persons. The only name appearing upon the warrant was that of McHie, but it appears that the names of the other 17 persons were typewritten on two slips of paper, both of which were pasted upon the warrant after the words "Sidmon McHie." Shortly afterwards these slips disappeared, and have not since been found, so that the warrant appears to have been issued only against McHie. The complaint filed with the commissioner contains the names of all the defendants, 45 in number, and it appears that 7 warrants were issued, 6 in addition to the one above described. On the same day Scarborough, Charles F. De Woody, another special agent, and some other assistants, together with about 20 policemen of the city of Chicago, went to the offices of the Capital Investment Company for the purpose of arresting the defendants and seizing the property of the company on the theory that it was being used in the perpetration of a felony. No marshal or deputy marshal was present, nor any person authorized to serve a warrant or make a seizure. At the time of the raid Sidmon McHie was in New York, but some of the officers of the corporation and its clerks and employés were present, about 18 in number, some of them being made defendants.

[1] The Capital Investment Company was doing business in a number of cities in different states, having branch offices connected by private telegraph wires, and, as the special agents desired to raid all of the offices simultaneously, they conceived it to be necessary to cut the telegraph wires in the main office, and seize the telegraph instruments. It appears from the affidavits on the part of the petitioner that, when the arrests and seizure were made De Woody, Scarborough, 10 special government agents, and 25 policemen came to the office of the company, and Scarborough advanced to the center of the room, and drew a large revolver, waving it towards the employés, and calling out loudly, "Throw up your hands, and keep them up, or some of you will get plugged. This place is in the hands of the United States government, and you are all under arrest." De Woody and Scarborough deny that the revolver was a large one, but admit its use.

De Woody testifies that the company had a number of different offices, and that it was the plan of the department to simultaneously arrest the managers of the different offices. Being connected by private telegraph wires, it was desired to put the private wire system out of commission, and, at the time Scarborough drew the revolver, he said, "Take your hands off those keys," which all the operators did, and that thereafter no revolver was flourished by any one in said offices, nor was any officer or employé of the company addressed by any officer except in ordinary conversational tones. All the property of the Investment Company was seized and taken to the government

building in Chicago, including some property which was not in use in their business. Afterwards defendants were allowed access to the rooms containing the books, papers, documents, and other property seized, with the right of inspection and taking copies.

It further appears from the affidavit of Walter Wainwright, deputy marshal, that about 3 o'clock p. m. December 15, 1910, he was requested to make a return upon the warrant above described against McHie and others, and was informed that 12 or 13 men had been arrested upon the warrant. Wainwright had just returned from a trip out of the city to Joliet, Ill., upon official business. He objected to making the return because he was not present and did not make any arrest, but after conferences with the district attorney and De Woody he made the ordinary return showing the arrest of certain of the defendants under the warrant. He testifies that he was not present at the time of the raid, being at Joliet as above stated. The papers show various other facts in relation to the disappearance of the typewritten slips attached to the warrant. Defendants claim that no such slips were attached, while the commissioner and his clerk and other witnesses state positively that the slips were typewritten and pasted upon the warrant, as there was not room on the blank to write all the names. It does not appear that the typewritten slips were seen by any one after the arrest.

Various other irregular acts by the special agents appear, such as the arrest without warrant of a stenographer in the commissioner's office, and, having him put under bond, "just to show him how it was done." He was not made a defendant in the original complaint before the commissioner, nor was any indictment found against him.

It would be exceedingly difficult under any circumstances to sustain the wholesale seizure and destruction of property shown in this case. The officers of the government, deriving their authority from the department of justice, acted in a most unjust and unnecessarily lawless manner. Under no circumstances had they any power to cut telegraph wires or break open a safe or vault. Nothing but a special order showing such a seizure as made it necessary to destroy property could have authorized it. They did not even insure the presence of a marshal, although making an entirely extravagant and wholly unnecessary show of force through policemen, special agents, and the use of the revolver. Such unauthorized raids are most deplorable in exciting the keenest sense of outrage and injustice in their victims, and are utterly opposed to the policy of the government. Even in such desperate cases as counterfeiting, the rules of the Secretary of the Treasury expressly deprecate arrests without warrant, and prohibit searches and seizures without a search warrant, except in cases of arrest. Secret Service Rules, arts. 3, 9. Seizure under subpoena duces tecum so broad as to be invalid as too general under Hale v. Henkel, 201 U. S. 44, 26 Sup. Ct. 370, 50 L. Ed. 652, is a mild proceeding compared with an arbitrary and illegitimate proceeding like this. The absolute necessity of constitutional restraint on official power is certainly shown to a demonstration by this record.

[2] The suggestion that no federal statute authorizes a commis-

sioner's warrant for the seizure of property used in the abuse of the mails is without force since the constitutional provisions referred to are self-executing. It is common practice to file a verified petition for searches and seizures, upon which a bench warrant issues from the clerk's office, after direction by the judge.

[3] The arrest having been made without warrant because of the absence of a marshal or deputy, the seizures were unlawful on this ground. The leading and satisfactory case of Dillon v. O'Brien, 16 Cox Crim. Cas. 245 (Irish, Exchequer Div.), and U. S. v. Mills (C. C.) 185 Fed. 318, are therefore inapplicable. The Irish case contains the best discussion extant upon the right of the state upon arrest under a criminal warrant to seize the instruments of crime found in the possession or control of the person arrested.

It is, however, sought to justify the seizure on the ground that the persons arrested were found actually in the perpetration of a crime, and could be arrested without warrant, under the Illinois statute; and thus, the arrest being lawful, the seizure was also valid under the Dillon and Mills Cases. It is sufficient to say, in answer to this position, that the seizure was unreasonable, no matter what technical power may have been behind it. Moreover, it would be a most surprising extension of the law of arrest without warrant to justify the seizure of peaceable persons, sitting quietly in their offices, on the ground that they were carrying on some business made criminal by some statute, or had formerly committed such an offense. On this theory all the officers, agents, and servants of the American Tobacco Company, for example, would have been subject to arrest without warrant by any one, officer or layman, because they were prosecuting an unlawful combination. Such a doctrine has no foundation, either in reason or necessity, and is utterly opposed to the fourth amendment to the Constitution.

[4] It is further objected on the part of the government that the Capital Investment Company has no standing in this case, no right to petition the court for the restoration of its property so unlawfully seized. As to this point, it is enough to say that the property was seized under the claim of judicial process, and thus brought under the control of the court. It appears to be placed beyond the reach of a writ of replevin, or any other effective independent or plenary remedy. The courts are always open to petitions of this kind, and the jurisdiction has been often exercised without question.

[5] That corporations are within the fourth, fifth, and fourteenth amendments to the Constitution was intimated in Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652. This inevitably follows from the multitude of decisions of the Supreme Court holding that a corporation is a person under the provision giving equal protection of the law. Smyth v. Ames, 169 U. S. 466, 578, 18 Sup. Ct. 418, 42 L. Ed. 819.

[6] It is urged that the marshal's return, although utterly false, cannot be traversed in a collateral proceeding, under Brown v. Kennedy, 15 Wall. 591, 21 L. Ed. 193. This application is made in the same proceeding. No doubt the marshal's return is conclusive be-

tween the parties, until set aside, but this rule does not conclude strangers. Even the judgment would not have such effect. Rigney v. De Graw (C. C.) 100 Fed. 213.

An order will be entered directing the surrender of the property to petitioner.